The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



Dated: June 24 2021

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 17-32856 |
| | ) | |
| Jessica R. Berndt, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 19-03057 |
| | ) | |
| Douglas A. Dymarkowski, Trustee | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Jeremy Berndt, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OF DECISION

This Adversary Proceeding is before the court on Plaintiff-Trustee Douglas A. Dymarkowski's Complaint to Avoid Fraudulent Transfer and Recover Property ("Complaint"). [Doc. #1]. Trustee seeks to avoid the transfer of a 2016 Suzuki GSX1300RAL6, VIN JS1GX72B8G2100647 to Jeremy Berndt as a fraudulent transfer under 11 U.S.C. §§548 and 544.

## JURISDICTION AND VENUE

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §1334(b) as a civil proceeding arising in or related to a case under Title 11. The Chapter 7 case and all proceedings in it arising under Title 11, including this adversary proceeding, have been referred to this court for decision. 28 U.S.C. §157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. This is a core matter under 28 U.S.C. §157(b)(2)(H).[1] Venue is proper under 28 U.S.C. §1409(a).

## FINDINGS OF FACT

"In an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52 (a)(1). The court's findings of fact based on the evidence submitted in the record and the evidentiary hearing testimony are set forth below. *See e.g., Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 710 (6th Cir. 1999). Whether or not specifically referred to in this Memorandum of Decision, the court has examined all the submitted materials and considered the evidence presented by the parties, has observed the demeanor and credibility of the witnesses' testimony, and has carefully weighed the evidence in determining the facts pertinent to the case and drawing conclusions therefrom.

### I. Procedural Background and Parties.

Jessica R. Berndt is the Debtor in the underlying Chapter 7 bankruptcy case. Jeremy Berndt, the Defendant in this adversary proceeding, married the Debtor in November of 2015. Plaintiff, Douglas A. Dymarkowski, is the Chapter 7 Trustee in the above-captioned case. [Ex. 8].

On August 24, 2019, the Trustee commenced this adversary proceeding by filing a complaint. [Doc. #1]. Defendant filed his Answer on September 24, 2019. [Doc. #7].

On October 31, 2019, the court entered an Adversary Proceeding Scheduling Order, [Doc. #9], setting November 26, 2019 as the date for further pretrial hearing. A second Adversary Proceeding Scheduling Order was entered designating February 25, 2020 as the date for further pretrial hearing and January 31, 2020 as the deadline for completion of discovery. [Doc. #13]. A third Adversary Proceeding Scheduling Order was entered setting April 9, 2020 as the deadline for the parties to file their respective exhibits and witness lists. [Doc. #19]. April 14, 2020 was scheduled as the trial date. [*Id.*]

---

1/ Trustee's Complaint alleges that this is a core proceeding under 28 U.S.C. §157(b)(2)(J), which deals with "objections to discharge." [Doc. #1, ¶3]. *But see,* 28 U.S.C §157(b)(2)(H)("proceedings to determine, avoid, or recover fraudulent conveyances."). Defendant admits to this allegation in his Answer. [Doc. #7, ¶3].

On or about March 24, 2020, this court entered an order vacating the trial set for April 14, 2020 and continued the matter based on ongoing public health concerns. [Doc. #21].

On August 27, 2020, after the matter was set for further hearing, [Doc. #23], the court entered an Adversary Proceeding Scheduling Order setting October 6, 2020 as the date for further telephonic pretrial conference. [Doc. #26]. Subsequently, Trustee and Defendant filed their respective Exhibit and Witness List. [Doc. ##33, 34]. A Video Evidentiary Hearing was held on January 14, 2021. [Doc. #34].

## II.   Facts.

On November 21, 2015, Defendant and Debtor were married. Before Debtor filed for bankruptcy, the couple bought the Suzuki motorcycle on July 18, 2016, which was titled in both of their names.

On September 7, 2017, Debtor filed her voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Debtor's bankruptcy schedules did not disclose any transfer related to the Suzuki, but she did disclose her interest in the Suzuki. Debtor's bankruptcy schedules listed assets totaling $87,054.51 and liabilities totaling $197,929.83.

Although the Suzuki is titled in the names of both Debtor and Defendant, Debtor paid the entire purchase price for the Suzuki. The purchase of the Suzuki occurred within two years of the Debtor seeking bankruptcy relief. At the time of the transfer, Debtor was insolvent. 11 U.S.C. §§101(32)(A); 548(a)(1)(B)(ii)(I). [Doc. #1, ¶22]; [Doc. #7, ¶22].

Prior to filing bankruptcy the Debtor was a "house flipper" who had fixed up and sold several houses. Defendant did work on the side as a "handyman." In mid-2015, Debtor purchased 5702 Silver Fox Court, Anderson, Indiana ("Silver Fox Court") and hired Defendant to do work on that property, getting it ready for sale. Initially, the Debtor and Defendant had just a business relationship. While working on Silver Fox Court, the Debtor and the Defendant developed a personal relationship that led to their November 2015 marriage.

Before purchasing the Suzuki, it appears that the work on Silver Fox Court had been mostly completed, and it was listed for sale. Both Debtor and Defendant were presented with evidence that they were mistaken in their belief that the proceeds from Silver Fox Court were used to purchase the Suzuki motorcycle, and could not remember clearly where the money had come from. Counsel for the Trustee cited to the Statement of Financial Affairs, P. 38, Q. 18, listing the transfer

of Silver Fox Court as having occurred in October, 2016, after the purchase of the motorcycle.[2]

In her testimony, Debtor confirmed the purchase date of the Suzuki as July 18, 2016, the balance paid on delivery as $13,004.32, with a unit price of $11,999.00. She also identified her signature on Exhibit 2. Debtor testified that she believed she owed Defendant because Defendant had performed most of the repairs and renovations for Silver Fox Court. As a result, Debtor purchased the Suzuki to serve as the compensation for Defendant's repairs and services in renovating the Silver Fox Court property for sale.

Debtor testified that although they were co-owners of the Suzuki on the title, it was her belief that the motorcycle belonged to, and had always belonged to, Defendant.[3] Nevertheless, Debtor had listed her interest in the Suzuki on Schedule A/B, with a value of $9,500.00. [Ex. 1, Schedule A/B: Property, p. 11]. Debtor testified that they purchased the Suzuki together since it was their first major purchase as a married couple, but primarily the purchase compensated Defendant for his services and repairs on Silver Fox Court.

Debtor testified she previously paid her mother and uncle for similar refurbishing services on the houses that she "flipped." Debtor testified that she listed Silver Fox Court for sale three months before it sold. Debtor stated she did not list Defendant as a creditor in her bankruptcy. Debtor testified that she made no other significant transfers before filing for bankruptcy. Lastly, Debtor testified that Defendant and Debtor had subsequently traded in the Suzuki for a jet ski.

Defendant began his testimony by identifying his signature on Exhibit 2, the Defendant testified that the Suzuki was his compensation for providing about 500 hours of repairs and other services in preparing the Silver Fox Court property for sale. Defendant confirmed that Debtor provided all the materials needed to work on Silver Fox Court. [Ex. 5, Interrogatory No. 7, p. 9]. Defendant estimated that his work, repairs, and services were about $25,000 based on his usual rate of $50 an hour. [Ex. 5, Interrogatory No. 7, p. 9]. Debtor described the work he performed as: reframing the kitchen and basement; adding a bedroom and closet to the basement; some electrical and plumbing work; installing two new bathrooms; and installing a new deck and new

---

2/ Trustee's Exhibit 3, unnumbered page 6, which was not admitted as an Exhibit, showed that the transfer, or at least the recording of the deed, occurred on 07/19/2016, the day after the purchase of the Suzuki.

3/ Legal ownership of the Suzuki would be determined under Ohio law, including the Ohio Motor Vehicle Certificate of Title Act. *See e.g.*, *Saturn of Kings Automall, Inc. v. Mike Albert Leasing, Inc.*, 92 Ohio St. 3d 513, 751 N.E.2d 1019 (Ohio 2001); *Allan Nott Ents, Inc. v. Nicholas Starr Auto, L.L.C.*, 110 Ohio St. 3d 112, 115, 851 N.E.2d 479, 482 (Ohio 2006).

4

roof.

Although Defendant testified that he kept contemporaneous records of his repairs and services, Defendant did not produce receipts, invoices, or other written documentation evidencing the repairs in response to Trustee's Request for Production. Debtor and Defendant's agreement for services was not in writing. Before marrying the Debtor, Defendant testified that he expected full payment for his services.

The Trustee questioned the Debtor's assertion that $25,000 worth of work was done on the Silver Fox Court property.

On cross examination, Defendant testified that he is a police officer for the City of Toledo. On redirect, when asked if Defendant had any records of his repairs, Defendant testified he did not. However, the court found Defendant's testimony as to the specific renovations made to Silver Fox Court, which were extensive, to be credible. The court does not find, and does not need to find, that the value of Defendant's services was actually $25,000.

After closing arguments, Trustee and Defendant agreed to admit Exhibits 1, 2, and 4 through 8 into evidence. The court asked Trustee and Defendant to submit post-trial briefs with law the court should apply in deciding the issue of whether Debtor received "reasonably equivalent value." Trustee submitted his post-trial brief. [Doc. #39]. Defendant did not submit a post-trial brief.

## CONCLUSIONS OF LAW

### I. Constructively Fraudulent Transfers.

Subsection 548(a)(1)(B) allows a trustee to avoid a constructively fraudulent transfer. Under this subsection, a debtor's actual intent in making the transfer is irrelevant.

The Bankruptcy Code's constructive-fraud provision states:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> . . . .
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made[.]

11 U.S.C. §548(a)(1)(B).

5

Similarly, §544 of the Code allows the trustee to avoid any transfer of an interest of the debtor in property voidable under applicable law by a creditor holding an allowable unsecured claim. *See, id.* §544(b)(1). "This 'strong-arm' provision of the Bankruptcy Code 'allows the trustee to "step into the shoes" of a creditor in order to nullify transfers voidable under state fraudulent conveyance acts for the benefit of all creditors.'" *Baumgart v. Ptacek* (*In re Ptacek*), 2019 WL 4049842, at *8, 2019 Bankr. LEXIS 2725, at *25 (Bankr. N.D. Ohio Aug. 27, 2019)(Harris, J.)(citation omitted).

The Code does not define "reasonably equivalent value." However, the Code's fraudulent-transfer provision defines "value" to mean "property, or *satisfaction* or securing of a present or *antecedent debt* of the debtor[.]" 11 U.S.C. §548(d)(2)(A)(emphasis added). *See, Southeast Waffles, LLC v. U.S. Dep't of Treasury* (*In re Southeast Waffles, LLC*), 702 F.3d 850, 857 (6th Cir. 2012)("a dollar-for-dollar reduction in debt constitutes—as a matter of law—reasonably equivalent value for purposes of the fraudulent-transfer statutes."). *See also,* Ohio Rev. Code §1336.03(A)(defining "value" to include an "antecedent debt" being "satisfied"); *Dymarkowski v. Wurst* (*In re Logan*), 2014 WL 2506147, at *3, 2014 Bankr. LEXIS 2406, at **7-8 (Bankr. N.D. Ohio June 3, 2014)(Gustafson, J.).

A trustee has the burden of proving that the debtor received less than reasonably equivalent value in exchange for the debtor's transfer by a preponderance of the evidence. *Lisle v. John Wiley & Sons, Inc.* (*In re Wilkinson*), 196 F. App'x 337, 341 (6th. Cir. 2006). "The fraudulent transfer provisions of the Code and the Ohio [Uniform Fraudulent Transfer Act] are substantially similar both in terms of rights, remedies, and defenses." *Slone v. Lassiter* (*In re Grove-Merritt*), 406 B.R. 778, 789 (Bankr. S.D. Ohio 2009). The narrow issue under submission is whether the Debtor received, under the Code and Ohio's Uniform Fraudulent Transfer Act, "reasonably equivalent value" for the transfer of a one-half interest in the Suzuki to him in exchange for the renovations done by Defendant on Silver Fox Court.

To determine "reasonably equivalent value," a court conducts a two-step analysis. First, a court considers whether "a debtor received any value for the exchange"; and, second, "[i]f value was received, the court then determines whether the value received was reasonably equivalent to the value surrendered." *Slone v. Dirks* (*In re Dirks*), 2009 WL 103606, at *7, 2009 Bankr. LEXIS 47, at **22-23 (6th Cir. BAP 2009). In doing so, courts are mindful that reasonably equivalent value "is not an esoteric concept" and is not limited to money or to value transferred pursuant to a

"valid contract." *See, Nathan v. Libra* (*In re Libra*), 584 B.R. 550, 560 (Bankr. E.D. Mich. 2018)(citations omitted).

### A. Debtor Received "Value."

The Code's "fraudulent-transfer provision defines 'value'" to expressly include "satisfaction" of an "antecedent debt of the debtor." *In re Wilkinson*, 196 F. App'x at 343.

> i. "Antecedent Debt."

The Code's "value" provision does not define the phrase "antecedent debt." However, the Code defines "debt" to mean "liability on a claim," 11 U.S.C. §101(12), and a "claim" includes a "right to payment[.]" *Id.* §101(5)(A); *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990)(right to payment means enforceable obligation).[4] *See also,* Ohio Rev. Code §1336.01(C), (E); *Glance v. Carroll*, 487 F.3d 317, 320-21 (6th Cir. 2007). Liability is generally defined as the "quality, state, or condition of being legally obligated or accountable" or a "financial or pecuniary obligation in a specified amount." Black's Law Dictionary (11th ed. 2019).

Defendant valued his services in renovating the Silver Fox Court property at about $25,000. However, as is discussed below, the value to be proven to defeat the Trustee's assertion that the purchase of the Suzuki was a constructively fraudulent transfer is an amount that is of "reasonably equivalent value" to a half interest in the motorcycle. While the changes in the Debtor and Defendant's relationship may have altered the equation at some point, when Defendant started work on Silver Fox Court it was with the expectation that he would be compensated. Debtor testified that she believed she owed Defendant as a result of Defendant's repairs and services, even though there was no agreement in writing between Debtor and Defendant.[5]

In other words, at the time the services were commenced, Debtor believed she was liable to pay Defendant, and Defendant believed Debtor would compensate Defendant for his repairs and services. The Trustee did not submit any evidence to contradict this testimony.

Debtor thus had a "debt" owed to Defendant, and Defendant had a right to payment for his

---

[4] Although *Davenport* was subsequently overruled by statute, the Supreme Court noted that the statute overruling *Davenport* did not overrule "our general conclusions on the breadth of the definition of 'claim' under the Code." *Johnson v. Home State Bank*, 501 U.S. 78, 83 n.4, 111 S.Ct. 2150, 2154, 115 L. Ed. 2d 66 (1991).

[5] As mentioned above, this court need not address the issue of whether there was a valid contract between the parties since "reasonably equivalent value" is not limited to money or value transferred under a "valid contract." *See, Nathan v. Libra* (*In re Libra*), 584 B.R. 550, 560 (Bankr. E.D. Mich. 2018)(citations omitted)

7

services. *In re Dirks*, 2009 WL 103606, at *6, 2009 Bankr. LEXIS 47, at **17-18 (recognizing a debt to be "antecedent" if it was incurred before the transfer took place). *See also, U.S. Tr. v. First Jersey Sec., Inc.* (*In re First Jersey Sec., Inc.*), 180 F.3d 504, 511 (3d Cir. 1999)(recognizing that an "antecedent debt" by the debtor materializes when the right to payment arises, generally when the debtor obtains goods or services). For these reasons, this court concludes Defendant's repairs and services gave him a right to payment and was an "antecedent debt." 11 U.S.C. §548(d)(2)(A).

  ii. "Value."

To determine whether the debtor received any value in exchange for the transfer "[a]ttention is paid to the value received by the debtor . . . not on the value given by the transferee." *In re Dirks*, 2009 WL 103606, at *7, 2009 Bankr. LEXIS 47, at **22-23.

As mentioned above, "value" expressly includes the "satisfaction"[6] of an "antecedent debt of the debtor." 11 U.S.C. §548(d)(2)(A); *Dymarkowski v. Wurst* (*In re Logan*), 2014 WL 2506147, at *3, 2014 Bankr. LEXIS 2406, at **8-9 (Bankr. N.D. Ohio June 3, 2014)(citing cases that hold "value" includes payment of an "antecedent debt"). The transfer of the Suzuki was in satisfaction (or partial satisfaction) of Debtor's debt owed to Defendant for the value received; *i.e.*, as compensation for the repairs and services Defendant rendered. To the extent that Debtor's purchase of the Suzuki was partial and/or full satisfaction of the debt owed to Defendant, Debtor received some "value" in accordance with the Code's statutory definition in §548(d)(2)(A). *In re Wilkinson*, 196 F. App'x at 341; *In re Southeast Waffles, LLC*, 702 F.3d at 857; *In re Logan*, 2014 WL 2506147, at *3, 2014 Bankr. LEXIS 2406, at **8-9. This court concludes that the Debtor received value.

 **B. The "Value" Received Was "Reasonably Equivalent."**

"If value was received, the court then determines whether the value received was reasonably equivalent to the value surrendered." *In re Dirks*, 2009 WL 103606, at *7, 2009 Bankr. LEXIS 47, at **22-23. The Sixth Circuit has held that in determining reasonable equivalence, the

---

6/ Although not defined in the Code, "satisfaction" generally means:

> 1. The giving of something with the intention, express or implied, that it is to extinguish some existing legal or moral obligation. • Satisfaction differs from performance because it is always something given as a substitute for or equivalent of something else, while performance is the identical thing promised to be done. — Also termed *satisfaction of debt*. 2. The fulfillment of an obligation; esp., the payment in full of a debt.

Black's Law Dictionary (11th ed. 2019).

19-03057-jpg Doc 45 FILED 06/24/21 ENTERED 06/24/21 16:27:23 Page 8 of 11

"critical time is when the transfer is 'made.'" *Allard v. Hilton* (*In re Chomakos*), 69 F.3d 769, 771 (6th Cir. 1995), *cert. den*. *Allard v. Hilton*, 517 U.S. 1168, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996)(citing *In re Morris Communications NC, Inc*., 914 F.2d 458, 466 (4th Cir. 1990)(quoting Collier on Bankruptcy §548.09 at p. 116 (15th ed.1984))). While some decisions have limited *Chomakos* because it involved the value given in gambling transactions, there is substantial authority that for purposes of determining "value," courts should look at the time of the transaction. *See*, *Lisle v. John Wiley & Sons, Inc.* (*In re Wilkinson*), 319 B.R. 134, 138-40 (Bankr. E.D. Ky. 2004), *aff'd*, *In re Wilkinson*, 196 F. App'x 337 (6th Cir. 2006); *Southeast Waffles, LLC v. U.S. Dep't of Treasury* (*In re Southeast Waffles, LLC*), 460 B.R. 132, 139 (6th Cir. BAP 2011) *aff'd, In re Southeast Waffles, LLC*, 702 F.3d 850 (6th. Cir. 2012); *Nathan v. Libra* (*In re Libra*), 584 B.R. 550, 559-60 (Bankr. E.D. Mich. 2018). *See also,* 5 Collier on Bankruptcy, ⁋548.05[2][b] at 548-72 (16th ed. 2020)("Likewise, any consideration given after the transfer may not be weighed unless it was part of the original bargain."). Further, reasonable equivalency is a question of fact. *In re Dirks*, 2009 WL 103606, at *7, 2009 Bankr. LEXIS 47, at **22-23.[7] Reasonable equivalency does not require exact equality. *See, BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 538 n.4, 114 S.Ct. 1757, 1762, 128 L.Ed.2d 556 (1994).

Courts are to determine "reasonable equivalency" from the standpoint of the creditors, [Doc. #39, p. 4], because the focus should be on the overall effect on the debtor's estate after the transfer. *See, In re Wilkinson*, 196 F. App'x at 343; *Suhar v. Bruno* (*In re Neal*), 541 F. App'x 609, 611-12 (6th Cir. 2013); *Riley v. Countrywide Home Loans, Inc.* (*In re Duplication Mgt., Inc.*), 501 B.R. 462, 483 (Bankr. D. Mass. 2013). "As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred." *In re Neal*, 541 F. App'x at 612 (citation omitted).

Defendant testified that the monetary value of his services on Silver Fox Court was about $25,000. He specifically described the renovations that he worked on. Debtor benefitted from

---

[7] Before deciding *Onkyo Eur. Elecs. GMBH v. Glob. Technovations, Inc.* (*In re Glob. Technovations*), the Sixth Circuit had "not squarely held that it applies the clear-error standard to a bankruptcy court's determination of reasonably equivalent value, but it ha[d] held in unpublished cases that 'whether [a debtor] received reasonably equivalent value [in a fraudulent-transfer case] is a question of fact.'" 694 F.3d 705, 719 (6th Cir. 2012)(citation omitted). However, the Sixth Circuit expressed their "agreement with the majority of Circuits" in adopting the clearly erroneous standard of review because reasonably equivalent value is a question of fact. *Id.* ("The First, Second, Fourth, Fifth, and Eighth Circuits apply a clear-error standard."(collecting cases)).

9

Defendant's renovations through the increase in value of Silver Fox Court from the work that was performed. Debtor and Defendant testified that the Suzuki primarily served as compensation for Defendant's renovations.

On the date of the transfer the "Unit Price" for the Suzuki was $11,999.00. [Ex. 2]. After a documentation fee, a title fee, a thirty-day license, and state sales tax, the balance on delivery was $13,004.32. [*Id.*] The motorcycle was jointly titled in the names of the Debtor and Defendant.

Debtor thus reduced or eliminated her antecedent debt to Defendant by purchasing the Suzuki, and the Debtor's reduction in debt is enough to establish equivalent value. *See, In re Wilkinson*, 196 F. App'x at 343 (recognizing a reduction in debt is sufficient to establish equivalent value); *In re Southeast Waffles, LLC*, 702 F.3d at 857. *See also, For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 560 F.3d 717, 722 (7th Cir. 2009)(brother-in-law's three years of labor to create business with retailer was reasonably equivalent value of business that labor created); *Parris v. Union Plants Bank of Ky. N.S.,* (*In re Vaughn*), 244 B.R. 631, 634 (Bankr. W.D. Ky. 2000)("[T]he record is devoid of any facts that would support a finding that the farming services Debtor received from [Defendant] was 'less than [the] reasonably equivalent value' of the transfer at issue."). *Cf. Reed v. Genter* (*In re Genter*), 2021 WL 1112538, at *6, 2021 Bankr. LEXIS 720, at **17-18 (Bankr. N.D. Tex. Mar. 23, 2021)(court found, in part, that debtor received less than a reasonably equivalent value for transferring title to a 1963 Chevrolet Impala SS in exchange for satisfying defendant's right to payment for cleaning and repair services, which defendant valued at $2,400.00); *Daneman v. Stanley* (*In re Stanley*), 384 B.R. 788, 800 (Bankr. S.D. Ohio 2008)("The refurbishing of the house never occurred, and therefore does not constitute value.").

While the Trustee questioned whether $25,000 worth of work was done, the court finds that the work Defendant credibly testified to was greater than the value of the interest he received in the Suzuki motorcycle. Accordingly, the Trustee failed to establish that Debtor received less than "a reasonably equivalent value" under §548(a)(1)(B) and Ohio Rev. Code §1336, *et seq*.

## II. Federal Rule of Civil Procedure 37(c) And the "Adverse Inference Rule."

Trustee asserts that under Fed. R. Civ. P. 37(c) and the "Adverse Inference Rule," this court cannot consider the testimonial evidence of Defendant's services before the purchase of the Suzuki because the Trustee is entitled to an adverse inference based on Defendant's failure to produce records of his services pursuant to the Trustee's general request for production of documents. [Doc. #38, pp. 6-7]. "The general rule is that where relevant information is in the possession of one party

and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it." *Kaye v. Agripool, SRL* (*In re Murray, Inc.*), 392 B.R. 288, 295 (6th Cir. BAP 2008)(alteration omitted)(citation omitted). "This rule is a permissive one which directs that the inference *may* be drawn by the trier of fact; it is not mandatory." *Id.* at 296. "Whether to draw the inference is a matter of discretion for the fact finder." *Id.* (citation omitted). A "bankruptcy court [is] not *required* to draw an adverse inference." *Id.* at 297.

Defendant testified that at the time he was refurbishing Silver Fox Court, he was contemporaneously writing down the specific renovations he was making, but further testified that he did not keep those writings because he did not imagine he would need to provide them to anyone four years later. While Defendant's testimony was somewhat contradictory – at one point he offered to go home and look for his records – his testimony was consistent with the relatively low level of importance of retaining records of at least partially satisfied debt owed by his now-wife, and the passage of time.

The Trustee did not provide any evidence of intentional misconduct to conceal such records.[8] This court weighed the credibility of the testimony and found Debtor's and Defendant's testimony to be, standing alone, truthful. While the records, if any, should have been turned over pursuant to the Trustee's discovery request, the adverse inference associated with Defendant's failure to make a thorough search of his records, during a pandemic on a dispute over this amount, do not overcome Defendant's credible testimony regarding the work he performed on Silver Fox Court. The court is unwilling to essentially grant a default judgment in favor of the Trustee based upon work records that may, or may not, exist.

Accordingly, the court finds that Trustee did not carry his burden of proving that Debtor received less than a reasonably equivalent value when she purchased the Suzuki and put Defendant on the title as co-owner. A judgment consistent with this Memorandum will be entered.

---

8/ In *In re Murray*, the Trustee of the Debtor's Liquidating Trust submitted a post-trial brief, a Proposed Final Statement of Facts and Conclusions of Law, after trial and asserted that he was entitled to an "adverse inference" on emails that were not produced pursuant to a request for production. *Id.* The Bankruptcy Appellate Panel questioned "whether the Trustee properly raised this issue in the bankruptcy court. He did not file a motion to compel discovery, no supplemental request for production of documents was made, and no pre-trial motion requesting that an adverse inference be drawn was filed by the Trustee." *Id.* at n.1.

11